COURT OF APPEALS OF VIRGINIA


Present:  Judges Bumgardner, Kelsey and Senior Judge Hodges


ROBERT DEANE

                                    MEMORANDUM OPINION*
v.    Record No. 0858-03-2           PER CURIAM
                                    SEPTEBMER 9, 2003
ELLEN GARDNER, A/K/A
 ELLEN DEANE


            FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                      Michael C. Allen, Judge

            (Richard L. Locke; Robert W. Partin; Locke &
            Partin, PLC, on brief), for appellant.

            No brief for appellee.


     Robert Deane, father, and Ellen Gardner, mother, are divorced

and had three children during their marriage.  Father appeals a

decision of the trial court denying his motion for a change in

custody of two of the parties' children.  Father contends on

appeal that the trial court erred in:  (1) finding no material

change in circumstances; (2) not awarding custody to him;

(3) ignoring the express preferences of the children to live with

him; (4) awarding mother attorney's fees; (5) disproportionately

allocating the guardian ad litem fees; (6) granting mother a

change in visitation; and (7) not finding that mother was estopped

from arguing there was no material change in circumstances.  Upon

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

reviewing the record and father's brief, we conclude that this appeal is without merit. Accordingly, we summarily affirm the decision of the trial court. See Rule 5A:27.

BACKGROUND

The parties were married in 1982. The parties had three children during the marriage: Jason, who was born in 1983, Kacey, who was born in 1987, and John, who was born in 1990. The trial court entered a final divorce decree on May 23, 2001, nunc pro tunc to September 25, 2000, awarding primary physical custody of the children to mother and visitation to father.

The record indicates that, after entry of the September 2000 custody order, the relationship between mother and two of the children became strained, particularly when mother indicated she wanted to move to Atlanta with the children. Father filed a motion for an injunction to prohibit the move to Atlanta. He also filed a motion to amend custody and visitation, requesting custody of the children.

By order entered on May 31, 2002, the juvenile and domestic relations district court (J&DR court) found no material change in circumstances had been proven and dismissed father's motion to modify custody and visitation with respect to Kacey and John. The parties agreed that Jason's best interests would be served by vesting his physical and legal custody with father, which the J&DR court ordered.

- 2 -

Father appealed the J&DR court's decision concerning Kacey and John to the trial court. Mother also filed a motion to modify visitation during the summer vacation time period. On November 25, 2002, the trial court held a hearing on the issues. At that time, Kacey was fifteen years old and John was twelve years old.

The guardian ad litem was involved with the case from the time of the original custody award. He filed several reports with the courts. In his supplemental report filed on November 22, 2002, he wrote that John desired a "50/50" custody arrangement. Kacey had earlier expressed a desire for a "50/50" custody arrangement, but later expressed a desire to live with father for ten days, then mother for four days, stating that she had a "better relationship" with her father. The record indicates that both children do well in school.

In his report, the guardian ad litem also stated that he asked father what changes warranted consideration of the custodial and visitation arrangements. Father cited mother's visit to Atlanta with the intent of possibly moving there and a deterioration in communication between the parents.

The record also contains several letters from Richard Grosse, a licensed clinical social worker, to the guardian ad litem. Grosse had met with members of the family. In a letter dated February 22, 2002, Grosse expressed concern about the parents' "inability" "to work together." He wrote that each parent claims the other is uncooperative. Grosse opined that any "difficulties"

- 3 -

the children were experiencing "intrinsically stem[med] from the inability of [the parents] to develop a parenting partnership." Grosse stated that both father and mother were "responsible for this."

Father testified at the hearing that since September 2000, "things" "have deteriorated rather rapidly" and that mother exerts more "control" over the children. He described mother as "autocratic," and he stated that his relationship with mother has become more tense. Father testified that Kacey has been "pulling away" from her mother, especially since the issue of moving to Atlanta arose because Kacey did not want to move. Father testified that Kacey has anger toward her mother.

Father also stated that in November 2001, mother suddenly left the area for three months, leaving the children in his care. Father testified that mother did not tell him or the children where she was going. However, mother did visit with the children during this time period. The parties appear to dispute the facts about this time period. The report of the guardian ad litem indicates that, during this time, the parties sold the marital residence where mother had been residing and mother's future housing arrangements were not secured at the time of the closing. She, therefore, asked father to keep the children until her housing situation was remedied.

Father testified that he believes it would be best for the children that he have primary physical custody of them because he

communicates well with the children, he supports the children emotionally, he has a flexible work schedule allowing him to attend certain school events, and he provides a safe and secure environment where they do not have to worry about what they say. He stated that he has a close bond with the children. He recognizes the children need both parents to be involved in their lives, which is what he desires. Father also expressed a desire to have flexibility in the visitation schedule, with each parent having a few weeks with the children during the summer.

The trial court met in camera with Kacey.

At the conclusion of father's evidence, mother moved to strike the evidence on the ground that father failed to show a material change in circumstances and that it was in the best interests of the children to change the custody arrangement. The guardian ad litem deferred to the motion to strike. The trial court stated that it considered the evidence presented, the supplemental report of the guardian ad litem, and the arguments of counsel in light of the factors set out in Code § 20-124.3. The trial court agreed with mother and concluded that the evidence did not establish a material change in circumstances requiring a modification in custody. The trial court modified the summer visitation schedule so that each parent had three non-consecutive weeks of vacation with the children, with father designating his three weeks by April 1 of each year.

ANALYSIS

As the party seeking to modify custody, father bore the burden to prove: (1) there had been a material change of circumstances since the most recent custody award and (2) that a change in custody would be in the best interests of the children. See Hughes v. Gentry, 18 Va. App. 318, 321, 443 S.E.2d 448, 450-51 (1994). "This rule advances the obvious benefits of providing stability in the life of the child whose custody is the subject of the conflict between the parents." Id. at 322, 443 S.E.2d at 451. "Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence." Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986).

We review the evidence in the light most favorable to mother as the prevailing party below. Turner v. Turner, 3 Va. App. 31, 34, 348 S.E.2d 21, 22 (1986). So viewed, we cannot conclude that the trial court erred in finding father failed to prove a material change in circumstances occurred between the entry of the September 2000 order and November 2002. The record shows that the parents have difficulties working together on issues related to the children and, as the trial court stated, the children have become "immersed in the litigation." Many of the tensions and poor communications cited by father as reasons to change custody could be resolved if the parents developed a "cooperative parenting partnership" as suggested by the licensed clinical

social worker. The record shows that mother and Kacey have had some difficulties in their relationship and Kacey expressed a desire to spend more time with father. John expressed a desire to spend equal time with each parent. However, the preference of the children was but one factor for the trial court's consideration, was not dispositive of the issue, and did not rise to the level of supporting a change of custody. Indeed, the record indicates the children are doing well in school while in mother's custody. Therefore, the trial court did not err in denying father's motion.

Furthermore, the trial court did not abuse its discretion in making a change in the visitation schedule. The trial court stated that the change improved the scheduling for both parents. Moreover, in modifying the visitation schedule, the trial court granted father's request that he not be required to return the children until Monday mornings in the summer so that he could take the children on weekend trips. Father's argument that mother was estopped from requesting a change in visitation is without merit.

"'An award of attorney fees is a matter submitted to the trial court's sound discretion and is reviewable on appeal only for an abuse of discretion.'" L.C.S. v. S.A.S., 19 Va. App. 709, 721, 453 S.E.2d 580, 587 (1995) (citation omitted). Under the circumstances of this case, we find no abuse of discretion by the trial court.

Furthermore, an award of guardian ad litem fees, like any award of attorney's fees, "is a matter for the exercise of the

trial court's sound discretion after consideration of the circumstances and equities of the entire case."  Davis v. Davis, 8 Va. App. 12, 17, 377 S.E.2d 640, 643 (1989).  We cannot say that the trial court abused its discretion in requiring father to pay eighty percent of the guardian ad litem fees.

Accordingly, the decision of the circuit court is summarily affirmed.

Affirmed.