# STEWART WAYNE DAVIS

## V.

# DONNA JEAN MOONEY DAVIS

Record No. 890581

April 20, 1990

Present: Carrico, C.J., Compton, Stephenson, Russell, Whiting, and Lacy, JJ.,
and Poff, Senior Justice

658

*Sterling H. Weaver, Sr.* for apppellant.
*Donald G. Wise* for appellee.

SENIOR JUSTICE POFF delivered the opinion of the Court.

A husband who made a deed of gift to a friend during a divorce proceeding appeals from a judgment setting aside the conveyance as a fraud upon his wife. The husband contends that the Chancellor's ruling violated his rights under an antenuptial agreement.

On October 5, 1984, the day before they were married, Stewart Wayne Davis (Davis) and Donna Jean Mooney Davis (Donna) entered into a written agreement declaring that "each of the parties desires to retain their respective separate property rights".

In April 1986, Davis shot his wife. The bullet severed her spinal cord, and Donna became paralyzed and confined to a wheelchair. Donna filed a tort action and a suit for divorce. The Chancellor awarded her spousal support *pendente lite*. Davis became delinquent in his payments, and in March 1987, the court entered judgment for $1,750 against him.

On November 20, 1987, Donna gave Davis formal notice that she would ask the court on December 2, 1987 to grant her a final divorce and to enter judgment against him for cumulative arrearages in spousal-support payments of $9,000. The court entered the

decree that day granting Donna's requests. On the day before, Davis had executed a deed of gift conveying the residence titled in his name to a friend, Kathy Mauldin.

Invoking the remedy provided by Code § 55-80[1], Donna filed a bill of complaint against Davis, Mauldin, and another. Donna alleged that the conveyance "was made without adequate consideration and was made to hinder, delay and defraud the complainant and that she was entitled to have the deed set aside and the property subjected to the payment of the complainant's judgments and future support." The Chancellor referred the cause to a commissioner in chancery.

Upon consideration of the evidence before him, the commissioner reported that the property was encumbered by the lien of Donna's March 1987 judgment for spousal support, several other judgment liens, and three deeds of trust. The commissioner concluded that "the deed of gift . . . was made for the purpose of defrauding the complainant, and the creditors of Stewart W. Davis" and that "Kathy Mauldin is not a bona fide purchaser for value".

Excepting to the commissioner's report, Davis maintained that he was not guilty of fraud because he was given the right under the antenuptial agreement to dispose of his separate property, free and clear of any claim by Donna, including a claim for spousal support.[2] In a final decree, the Chancellor overruled the exceptions, confirmed the commissioner's report in full, ordered that "the deed of gift . . . be and it hereby is, set aside", and appointed special commissioners to sell the real estate to pay Davis' creditors. We awarded Davis an appeal.

Renewing the argument rejected below, Davis asks us to reverse the judgment and to order Donna "to pay the reasonable attor-

---

[1] § 55-80. **Void fraudulent acts; bona fide purchasers not affected.** — Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

[2] Davis' challenge to the spousal-support award was rejected by the Virginia Court of Appeals. *Davis* v. *Davis*, 8 Va. App. 12, 377 S.E.2d 640 (1989).

neys fees incurred by the defendant for his having to defend this action." In support of his argument that the Chancellor's ruling was inconsistent with the property rights he acquired under the antenuptial agreement, Davis relies upon language found in one clause of the agreement. That clause provides that either party may use or transfer separate property "free from any claim that may be made by the other party by reason of their marriage". Davis argues that "the claim for spousal support has to be construed as a claim made by the other party by reason of the marriage" and, hence, that Donna has no standing to challenge the conveyance. He cites familiar principles of the law of contracts.

■ Donna does not suggest that the antenuptial agreement offends public policy, and we agree with Davis that the agreement is an enforceable contract. *See Capps* v. *Capps*, 216 Va. 378, 219 S.E.2d 901 (1975). We do not agree, however, with the retrospective interpretation Davis places upon the contract. Read out of context, the excerpt upon which he relies seems to support the conclusion that the parties intended to surrender their respective rights to spousal support. Read as a whole, the language of the contract compels a contrary conclusion.

■ The intent of the contracting parties appears first in the "whereas" clauses. Davis "owns real and personal property of substantial value, which he wishes to leave to his children from a previous marriage". Donna "has personal property of substantial value which she wishes to leave to her child of a previous marriage". Obviously, the parties intended to bind themselves to honor each other's rights to control the devolution of the owner's property at death, free of any interests a surviving spouse might otherwise have in that property. The same intent is found in the covenant clauses. Each party agreed to waive "all rights as surviving spouse to renounce the Last Will and Testament of the deceased spouse" and to "release all interest . . . in the . . . estate of the other party which each may acquire by operation of law . . . by way of dower, curtesy or allowance as surviving spouse".

The clause containing the excerpt upon which Davis relies provides in full:

(2) SEPARATE PROPERTY - Except as otherwise specified in this Agreement, the parties shall separately retain all rights in his or her own property, both real and personal, tangible or intangible, whether now owned or hereafter ac-

quired, and each of the parties shall have the full, absolute and unrestricted power and right to lease, manage, sell or dispose of his or her own property in any manner, and to receive all moneys and profits therefrom, free from any claim that may be made by the other party by reason of their marriage, and without molestation or interruption from the other party.

■ In keeping with the parties' intent as manifested in all other clauses of the document, we construe this clause to be a mutual waiver of any property interests that might accrue "by operation of law" to one party in the property of the other "by reason of their marriage". Unlike dower, curtesy, the right of inheritance, or the right to renounce a will, the right to spousal support is not a property interest, and it does not accrue by operation of law but only upon proof of entitlement.

■ Had the parties intended their contract to apply to their spousal-support rights, they could have included express covenants to that effect. They did not, and we must construe and apply the contract as it was written. Accordingly, we hold that the antenuptial agreement did not contemplate surrender of the parties' respective rights to claim and to prove entitlement to spousal support and, consequently, that Donna was eligible as the beneficiary of a spousal-support award to pursue the remedy provided by Code § 55-80.[3]

We will uphold the Chancellor's ruling rejecting Davis' theory, and because we consider the evidence fully sufficient to support his finding of intent to defraud, we will affirm the decree.

*Affirmed.*

JUSTICE COMPTON, with whom JUSTICE STEPHENSON joins, dissenting.

On brief, the former wife concedes, as she must, that antenuptial agreements "are subject to the same rules of construction and

---

[3] While it is true that Donna's $9,000 spousal-support award was not entered until a day after Davis had divested himself of title to the property, the statute affords its remedy to "persons" as well as to "creditors" and applies not only to what they are entitled to but also to what they "may be entitled to". Moreover, under the March 1987 spousal-support award of $1,750, Donna was more than a person or a creditor; she was a judgment creditor.

interpretation as other contracts." In Virginia, we are committed to the "plain meaning" rule when interpreting contracts. *Appalachian Power Co.* v. *Greater Lynchburg Transit Co.*, 236 Va. 292, 295, 374 S.E.2d 10, 12 (1988). Clear and explicit language in a contract is to be taken in its ordinary signification, and, if the meaning is plain when so read, the instrument must be given effect accordingly. *Amos* v. *Coffey*, 228 Va. 88, 92, 320 S.E.2d 335, 337 (1984). Where, as here, the intention of the parties has been stated plainly, a court may not fashion a different agreement for them under the guise of contract interpretation.

Contrary to the foregoing settled principles, the majority has refused to enforce the plain terms of the present agreement.

The agreement, after reciting that "each of the parties desires to retain their respective separate property rights in the real and personal property presently owned by him or her," provides:

> "SEPARATE PROPERTY - Except as otherwise specified in the Agreement, the parties shall separately retain all rights in his or her own property, both real and personal, tangible or intangible, whether now owned or hereafter acquired, and each of the parties shall have the *full, absolute* and *unrestricted power* and *right to* lease, manage, sell or *dispose of his* or her *own property* in *any manner*, and to receive all moneys and profits therefrom, *free from any claim that may be made by the other party by reason of their marriage*, and without molestation or interruption from the other party." (emphasis added).

Obviously, the intention of the parties, as clearly expressed in the agreement, was to protect their respective separate assets from any claims of the other spouse that may have accrued as a result of the marriage. Manifestly, a claim for spousal support must be construed as a claim made by reason of the marriage between the parties. Given the fact that under the plain terms of the agreement the husband could "dispose of his . . . own property in any manner . . . free from any claim" of the wife "without molestation or interruption" from her, she had no legal basis to object to the disposition of the realty in question. Consequently, the husband was not guilty of fraud upon her when he disposed of his separate property.

In confirming the trial court's action, the majority has placed an unwarranted gloss upon the parties' agreement by saying that the disputed clause is "a mutual waiver of any property interests that might accrue 'by operation of law' to one party in the property of the other 'by reason of their marriage.' " Building on that gloss, the majority then states that "the right to spousal support is not a property interest, and it does not accrue by operation of law but only upon proof of entitlement." That is a nice theory, but one which is not expressed anywhere in the agreement. And, in placing this gloss on the agreement, the majority ignores the parties' intent as expressed clearly and explicitly in the contract language.

Accordingly, I would reverse the judgment of the trial court and dismiss the former wife's bill of complaint.