Present:  All the Justices

LUTHER BRUCE BUCHANAN, ET AL.

v.  Record No. 022351     OPINION BY JUSTICE ELIZABETH B. LACY
                                         September 12, 2003
BONNIE S. BUCHANAN

FROM THE CIRCUIT COURT OF MECKLENBURG COUNTY
Leslie M. Osborn, Judge

In this case, Luther Bruce Buchanan (Husband) seeks the
reversal of certain orders allowing Bonnie S. Buchanan (Wife)
to maintain an action for fraudulent conveyance under Code
§ 55-80, directing a special commissioner to hold the proceeds
of those conveyances and others pending disposition of a
divorce proceeding, and awarding Wife attorneys' fees.
Because, for the reasons stated below, we find that Wife was
an "other person" who "may be" entitled to payment from
Husband under the fraudulent conveyance statute, that the
directive to the special commissioner to hold certain funds
did not create constructive trusts, and that the issue
regarding attorneys' fees is moot, we will affirm the judgment
of the trial court.

MATERIAL FACTS AND PROCEEDINGS

Husband and Wife were married in September 1973 and
separated in February 2000.  On January 5, 2001, eleven months
after the couple's separation, Husband sold construction
equipment to his father Harold B. Buchanan (Father), for

$30,500.  Father paid Husband $8,000 in cash and signed a promissory note in the amount of $22,500.  A month later, on February 26, 2001, Husband gave his mother, Bessie B. Buchanan (Mother), and Father $12,250 and $5,750, respectively, in repayment of loans they had allegedly made to Husband in the past.  The funds given to Husband's parents were proceeds from a $40,000 line of credit and an additional $40,000 loan Husband obtained in January 2001.  The line of credit and loan were secured by deeds of trust against the Buchanan home.  The home was built during the marriage on property owned by Husband prior to the marriage and titled in his name.

On March 9, 2001, Husband filed a bill of complaint seeking a divorce on the grounds of separation in excess of one year.  Wife filed an answer and cross-bill alleging cruelty and constructive desertion.  On July 2, 2001, Wife filed a bill of complaint against Husband and his parents asserting that Husband's conveyances to his parents were fraudulent in violation of Code §§ 55-80 and –81.

At the request of the parties, the trial court consolidated the fraudulent conveyance and the divorce proceedings.  The parties agreed that the claims would be heard sequentially, with evidence on the fraudulent conveyance claims presented first.

In the proceedings relating to the fraudulent conveyance claims, the trial court sustained Husband's motion for summary judgment regarding Wife's claim pursuant to Code § 55-81, but denied Husband's motion for summary judgment in which he asserted Wife could not maintain an action pursuant to Code § 55-80.  Following an evidentiary hearing, the trial court held that Husband's transfers of $5,750 and $12,250 to Father and Mother, respectively, were void because each was done with the intent to "delay, hinder, or defraud" Wife's ability to recover property she may be entitled to from Husband in violation of Code § 55-80.  The court did not void Father's title to the construction equipment, finding that the sale was for valuable consideration.

The trial court appointed a Special Commissioner to take possession of the $22,500 promissory note and hold in "constructive trust" payments due to Husband by Father pursuant to that note, the $12,250 paid to Mother, and the $5,750 paid to Father pending the evidentiary hearing on the divorce and equitable distribution determination.

Following the hearing in the divorce action, the trial court entered an order requiring Husband to pay Wife $105,000 based upon its determination of equitable distribution.  The court also awarded Wife $27,000 for her attorneys' fees and costs "incurred in this matter and the fraudulent conveyance

action." Wife received partial satisfaction of these monetary awards when, pursuant to the trial court's order, the Special Commissioner paid Wife, from the funds held in "constructive trust," the $12,250 that Husband originally paid to Mother and an $11,250 payment made by Father on the promissory note.

In this appeal, Husband challenges the trial court's failure to sustain his motion for summary judgment regarding Wife's ability to maintain an action pursuant to Code § 55-80, the imposition of a "constructive trust" on the promissory note and various cash payments, and the award of attorneys' fees for the fraudulent conveyance action. We consider these issues in order.[1]

## CODE § 55-80

Husband's first assignment of error involves the application of the fraudulent conveyance statute, Code § 55-80, to the circumstances of this case.[2] Husband does not

_____

[1] We do not consider the $5,750 payment to Father here because for reasons not relevant to this appeal, those funds were returned to Father, rendering that issue moot.

[2] Code § 55-80 provides in relevant part:
Every gift, conveyance, assignment or transfer of . . . any estate, real or personal, . . . given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

4

challenge the trial court's determination that he fraudulently conveyed funds to Mother; rather, Husband asserts that Wife could not maintain an action under Code § 55-80 because her claim against him had not accrued at the time of the conveyance. Husband argues that Wife's claim accrued only upon an equitable distribution determination in the context of their divorce proceeding and that the divorce proceeding was not filed until after the conveyance at issue. Thus, Husband asserts that, at the time of the conveyance, Wife was not an "other person" who "may be lawfully entitled" to payment from Husband for purposes of Code § 55-80. We disagree.

Code § 55-80 embodies the common law principle that transfers of real or personal property made "with intent to delay, hinder, or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to" are void. The "essence of fraudulent conveyance . . . is the diminution of the debtor's estate to the detriment of the creditor's right of realization." 1 Garrard Glenn, Fraudulent Conveyances and Preferences § 319, at 556 (rev. ed. 1940).

To maintain an action under this statute, the entitlement of one alleging a fraudulent conveyance need not be judicially established or reduced to judgment at the time of the challenged conveyance. For example, in Crowder v. Crowder, 125 Va. 80, 99 S.E. 746 (1919), a wife prevailed in an action

5

under a predecessor to Code § 55-80 even though the fraudulent conveyance occurred prior to any determination of the wife's right to a divorce or alimony. Moreover, in Davis v. Davis, 239 Va. 657, 391 S.E.2d 255 (1990), we said that although the spousal support award was not made until after the fraudulent conveyance, the wife could pursue an action under Code § 55-80 because that section applies to both what one is entitled to, and what one "may be entitled to." Id. at 661 n.3, 391 S.E.2d at 257 n.3. And, in another context, we have held that a "deed made with intent to defraud a recovery by a third person of damages in an action of tort, even before trial and judgment . . . is fraudulent and void to the same extent as a conveyance to hinder, delay and defraud existing creditors." Bruce v. Dean, 149 Va. 39, 46, 140 S.E. 277, 280 (1927).

Wife's claim here is based on that portion of Code § 20-107.3 that gives a spouse a marital interest in property acquired during marriage and in the improved value of the property occurring during marriage. Wife's entitlement to that marital interest was enforced in the divorce proceeding through the application of the statutory principles of equitable distribution. Like the claimants in Crowder, Davis, and Bruce, Husband's liability to Wife in this case was not established or quantified until after the conveyance at issue. Nevertheless, like those claimants, at the time of the

6

conveyance in question, Wife was an "other person" who "may be" entitled to payment from Husband.  Code § 55-80.

Husband, noting that independent actions for divorce, alimony, and support were available to the spouses in Crowder and Davis at the time of the fraudulent conveyances, asserts that the fraudulent conveyance statute requires that the spouse's claim be enforceable by an independent action at the time of the conveyance.  Husband contends that Wife had no cognizable claim for purposes of the fraudulent conveyance statute because at the time of the conveyance at issue no divorce action had been filed and Wife could not file an independent action for equitable distribution.  We again disagree with Husband.

Neither Crowder nor Davis held that the present availability of an enforcement action was a prerequisite to maintaining a fraudulent conveyance action under Code § 55-80.  In this case, the enforcement mechanism for the claim giving rise to Husband's liability to Wife was the divorce proceeding.  The grounds for divorce in this case, separation in excess of one year, prevented the filing of the divorce at the time of the conveyance.[3]  To hold that such limitations

---

[3] Whether Wife could have prevailed in a divorce proceeding filed on other grounds at the time of the conveyances is not clear from this record.  Nevertheless, the

7

period for instituting procedures to enforce a claim defeats Wife's fraudulent conveyance action is inconsistent with the longstanding public policy against fraudulent conveyances.[4]  A transferor could circumvent the policy by transferring assets just prior to the expiration of the limitations period even though the transferor knew of the impending liability and made the transfer precisely to shield the assets from the liability.

In this case, the parties had been separated for eleven months prior to the transfers in issue.  Husband did not challenge the trial court's finding that Husband conveyed the property with the intent of defrauding or otherwise deterring Wife from recovering amounts from him.  It is inherent in this finding that Husband believed that at the time he conveyed the funds, eleven months after the separation and one month before he filed a petition for divorce, a divorce proceeding would ensue and that a judgment would or could be entered making him liable to Wife.  He was aware of Wife's rights or claims under the provisions of Code § 20-107.3 and took action to defeat or hinder the realization of these rights.

---

ultimate result of the divorce action is not determinative of the fraudulent conveyance action.

[4] See also Code § 55-82 (allowing a creditor to file an action under Code § 55-80 before default by the transferor/debtor).

Accordingly, under the facts of this case, we conclude that the trial court did not err in holding that Wife was an "other person" who "may be" entitled to payment from Husband and therefore could maintain an action under Code § 55-80.

CONSTRUCTIVE TRUSTS

In the fraudulent conveyance proceedings, the trial court ordered that a "constructive trust" be imposed on the $22,500 owed Husband under the promissory note executed for the construction equipment and instructed the Special Commissioner to "take possession of the promissory note and any payments due thereunder pending further order of this court in the divorce action."  The trial court also imposed a "constructive trust" on the $12,250 Husband paid to Mother and ordered Mother to deposit that sum with the Special Commissioner pending the divorce action.

In his second and third assignments of error, Husband asserts that these "constructive trusts" were improperly imposed by the trial court.

A constructive trust is a mechanism by which the person holding title to property is subjected to an equitable duty to convey the property to another because allowing the title holder to retain the property would be unjust.  Leonard v. Counts, 221 Va. 582, 590, 272 S.E.2d 190, 195-96 (1980).  The constructive trust arises by operation of law and is

9

independent of the intention of the parties.  Id. at 588-89, 272 S.E.2d at 195.  In an action in which a constructive trust is imposed, the original transfer is not declared void; rather the title holder is ordered to transfer title of the property to or for the benefit of another.  Id. at 591, 272 S.E.2d at 196.

The remedy for a fraudulent conveyance is generally to declare the transfer void, or, under certain circumstances, to enter a personal judgment against the transferee.  See Price v. Hawkins, 247 Va. 32, 35-36, 439 S.E.2d 382, 384 (1994).  Voiding the conveyance was the remedy adopted by the trial court with regard to the funds Husband fraudulently transferred to Mother, but, rather than returning the funds to the Husband, the trial court placed the funds with the Special Commissioner pending a final decree in the divorce action.  Although labeled a "constructive trust," placing the funds with the Special Commissioner did not create the type of trust contemplated by the jurisprudence of constructive trusts.

Accordingly, regardless of the terminology used, the trial court did not impose a constructive trust on the funds fraudulently conveyed to Mother.[5]  Pursuant to Code § 20-103, the trial court had the authority to transfer those funds to

10

the Commissioner pending further proceedings in the divorce actions.

Husband also complains that the trial court erred in imposing a "constructive trust" on the promissory note executed by Father in favor of Husband and on the cash payments made under that note.[6]  Once again, however, the "constructive trust" imposed was not a true constructive trust.  The legal title holder of the note, the Husband, was not required to transfer the note to, or hold the note for the benefit of, another party.  The trial court's order that the note and its proceeds be placed in the custody of the Special Commissioner pending divorce was no more than a mechanism to preserve the Husband's estate authorized by Code § 20-103.  Because no true constructive trusts were placed on the note or its proceeds, we reject Husband's second and third assignments of error.

## ATTORNEYS' FEES

In his final assignment of error, Husband asserts that the trial court erred in awarding Wife attorneys' fees in the fraudulent conveyance action.  We will not address the merits

---

[5] In light of our conclusion that no constructive trust arose, we need not address Husband's assertion that an in personam judgment against Mother was the appropriate remedy.

[6] Although Husband asserts that the trial court imposed a constructive trust on the promissory note itself, the order

11

of this assignment of error, however, because the issue is moot.

The decree entered in the divorce action on August 6, 2002, awarded Wife $27,000 attorneys' fees and costs "incurred in this matter and the fraudulent conveyance action consolidated with this matter which sum . . . shall be docketed as a judgment against Husband."  The Husband did not appeal the attorneys' fees awarded in this decree, either to this Court or the Court of Appeals.[7]  The award of attorneys' fees in the amount of $27,000 is, therefore, a final judgment.

For the above stated reasons, we will affirm the judgment of the trial court.

<u>Affirmed.</u>

only imposed the "constructive trust" on the amounts owed to Husband under the note.

[7] Husband brought a separate appeal to the Court of Appeals regarding the trial court's holdings on constructive desertion, equitable distribution, payment requirements, interest, disposition of separate property, and future spousal support.  Resolution of those issues does not affect the matters before us.