# CIRCUIT COURT OF NELSON COUNTY

Michael J. Crandall
and Horseshoe Mountain
Management Co.

v.

Fulvio Babich
and Perry Giunta

Case No. CL07000252

Fulvio Babich
and Perry Giunta

v.

Michael Crandall

Case No. CL07000264

August 28, 2008

BY JUDGE J. MICHAEL GAMBLE

I am writing to furnish the decision of the court in these cases. In this regard, I find that Michael J. Crandall is entitled to damages from Fulvio Babich and Summitt Builders, Inc. ("Summitt") in the amount of $74,599.15. Crandall is granted a judgment in the amount of $38,341.75 against the above two defendants. The remainder of the damages, $36,257.40, is applied to Crandall's portion of the expense payment in the "Spec House" at Lot 74 on Fawn Ridge. A constructive trust is granted to

Crandall for $53,939.40 of the expenses to build the Spec House plus 15% of any profits. This constructive trust is granted in favor of Crandall against Babich, Summitt, and Perry Giunta on the proceeds from the sale of Spec House at Lot 74 Fawn Ridge. Perry G's Custom Painting, Inc., and Beech Grove Holdings, L.L.C., are dismissed as parties. Judgment is not granted in favor of Horseshoe Mountain Management Co., in addition to Crandall, because it was not a party to the original joint venture created by Crandall, Babich, and Giunta.

In 2005, Crandall, Babich, and Giunta reached an agreement to build modular homes in Nelson County, particularly in the Wintergreen area of Nelson County. This was an oral agreement never reduced to writing. Under the agreement each member of the joint venture would receive one-third of the profit. Babich, through Summitt (his company), would handle the administrative and financial aspects of the venture. Giunta would handle most of the painting and some of the carpentry and other hands-on aspects of the construction. Crandall would generally serve as a project manager of each job with duties to oversee the work and coordinate the tradesmen working on each house.

Under the evidence, the parties would generally divide the net proceeds after the payment of the expenses. As noted above, Babich would generally keep these records and make the distributions. He used Summitt to hold the money, make distributions, and enter into contracts. Thus, although the agreement was made by Babich, his corporation handled most of his duties in this respect.

In addition to paying the expenses and making distributions of the net profits, Babich/Summitt were paid 5% of the gross profit for fixed overhead and retainage to cover warranty matters. This 5% for fixed overhead and warranty was contested by Crandall.

Crandall maintains that the distributions on eleven houses are at issue in this case. The job name for each of those houses is set forth on Plaintiff's Exhibit # 1.

The joint venture seemed to function fairly well during the construction of the first five houses. However, the joint venture decided to build a model modular home on the property of Norma Jean Bradley located on Route 654 in the Wintergreen area. Babich, Giunta, and Crandall agreed to build this house at cost for Bradley with the expectation that they would able to rent it at a favorable rate for three years. No portion of this proposal was put in writing. After the construction of the house, Bradley refused to execute a three-year lease on the terms sought by the joint venture. This, along with other issues, caused Babich and Giunta to terminate the joint venture relationship with Crandall. The other issues testified to by Babich and Giunta were the management fees charged by Crandall to Bradley, workmanship issues, and conflict of interest issues caused by Crandall

working for a competing firm. As a result, in mid-2007, the joint venture was dissolved.

Crandall maintains that Babich and Summitt have not paid to him the money due from his share of the profits. Additionally, he maintains that he should be paid for his portion of the expenses that he paid in the Spec House and paid 15% of any profit from the Spec House.

The relationship of the parties in this case is a joint venture. A joint venture is established "where two or more parties enter into a special combination for the purpose of a specific business undertaking, jointly seeking a profit, gain, or other benefit, without any actual partnership or corporate designation." *PGI, Inc. v. Rathe Productions, Inc.*, 265 Va. 334, 340, 576 S.E.2d 438, 441 (2003); *Roark v. Hicks*, 234 Va. 470, 475, 362 S.E.2d 711, 714 (1987). In this case, Babich, Giunta, and Crandall clearly entered into a combination and business undertaking to build modular homes for a profit. This meets the definition of a joint venture.

The duties and liabilities of joint venturers are "substantially the same as those that govern partnerships." *PGI, Inc.*, 265 Va. at 342, 576 S.E.2d at 442. Further, as noted in *PGI, Inc.*, a partner may maintain an action in law against a copartner on claims growing out of a single venture which has been completed with nothing remaining to be done except the payment of a partner's claims. Further, as noted in *PGI, Inc.*, an independent action for conversion may lie separate from the partnership duties. *PGI, Inc.*, 265 Va. at 343-44, 576 S.E.2d at 442-43.

The tort of conversion is the wrongful exercise of authority over the property of another depriving him of his possession. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305, 440 S.E.2d 902, 905 (1994); *Universal C.I.T. Credit Corp. v. Kaplan*, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956).

Utilizing the above legal principles, the court finds that Crandall has not been paid his full share under the joint venture, and Babich and Summitt have converted property that is rightfully Crandall's property. Under the gross damages to Crandall, the Dwyer/Elkwood, Yates, Wombolt, Martin, Mendelson, and Dwyer/Fawn Ridge awards consist of profits not paid to Crandall. The one-third of 2.5% fixed overhead is a return to Crandall for overhead erroneously charged by Babich/Summitt. Babich testified to a fixed overhead of 5% that was deducted as an expense. He correctly testified that he has fixed overhead expenses for equipment, insurance, administrative expenses, and possibly warranty items. However, he did not produce any evidence as to how this is calculated. The court understands that he does have fixed overhead and that he handled the administrative part of the joint venture. However, without further evidence, the court finds that this is excessive. Accordingly, the fixed overhead is reduced to 2.5%. Because Crandall receives one-third of the profits, he is entitled to be

reimbursed for one-third of the 2.5% fixed overhead erroneously charged. This is $4,773.00.

Additionally, Crandall is awarded $86.91 for the Crandall expenses not reimbursed shown on Plaintiff's Exhibit # 16. I find, however, that Crandall is responsible for one-third of the cost of the business sign. Therefore, the reimbursement should be for two-thirds of $2,200.00 rather than the full amount. This reduces the net to $86.91.

I find that the joint venture had been terminated when the substantial work was done on the Gschwind and Meditz homes. A partnership, and by implication a joint venture, is dissolved when a partner withdraws. Va. Code § 50-73.49(3). By the time that substantial work was performed on the Gschwind and Meditz homes, Babich and Giunta had terminated the joint venture with Crandall. Crandall did not make any material contributions to either of these projects. Therefore, he is not entitled to recovery for these projects.

I cannot find that the evidence has proven any joint venture assets to which Crandall is entitled to recover.

There is a reduction in damages of $14,777.64. The Bradley adjustment of $6,108.97 consists of two-thirds of the Bradley project management fees paid to Crandall. Because Crandall was working for the joint venture, payments to him for his management fees are assets of the joint venture. Thus, the two-thirds share belonging to the combination of Babich and Giunta should be returned to the joint venture account. Accordingly, the net damages are $74,599.15.

Under the evidence, the three members of the joint venture agreed to pay for the expenses of the Spec House at Lot 74 Fawn Ridge. They agreed to be reimbursed for their individual investment in the expenses of the construction of the house from the sale proceeds before the payment of profits. Crandall agreed to pay 15% of the expenses to be reimbursed at the time of sale. Additionally, he is to receive 15% of the profits. The evidence established that Crandall paid $17,682.00 of the expenses. His total 15% share of the expenses is $53,939.40. Because the members of the joint venture were utilizing their profits from other houses to pay the expenses of the Spec House, $36,257.40 of Crandall's damages must be invested in the Spec House for him to comply with his 15% requirement. This leaves an actual judgment in favor of Crandall against Babich and Summitt in the amount of $38,345.75.

Because the expenses on the Spec House will be paid at the time of sale together with the respective profits of the joint venturers, a constructive trust judgment is granted against Babich, Summitt, and Giunta placing a constructive trust on the proceeds from the sale of the Spec House in favor of Crandall. A constructive trust is a mechanism whereby a person holding property is subject to an equitable duty to convey the property to another when to allow the holder of the property to retain the property would be

unjust. In a constructive trust, the original transfer is not void, the holder is merely ordered to transfer the property for the benefit of another. *Buchanan v. Buchanan*, 266 Va. 207, 214, 585 S.E.2d 533, 537 (2003). That is the exact situation in this case. Babich, Summitt, and Giunta will receive the proceeds. Crandall has a beneficial share of the proceeds. Thus, they must transfer the share of Crandall to Crandall.

Babich and Giunta have filed a separate action against Crandall requesting a constructive trust and damages for fraud. First, fraud has not been proven by clear and convincing evidence. Thus, there can be no recovery on the fraud claim or punitive damages.

Next, the court has compensated Babich and Giunta for two-thirds of the Bradley project management fees. Thus, there is no other joint venture property upon which the court could impose a constructive trust. Accordingly, this issue moot. The action of Babich and Giunta against Crandall in # CL07000264 is dismissed.